# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **TONY DEBERRY # 44484,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:26-cv-00360** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **CHAD YOUKER,** *Cpt.*, *in his official* | ) | **Magistrate Judge Evans** |
| *capacity, et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Tony DeBerry, an inmate in the custody of the Williamson County Jail in Franklin, Tennessee, filed a pro se complaint under 42 U.S.C. § 1983 concerning the removal of religious materials, including his Bible. (Doc. No. 1). Plaintiff also asserts claims under Tennessee law. He has filed a Motion for Preliminary Injunction. (Doc. No. 3). The court must begin with the filing fee.

## I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Plaintiff has submitted an Application for Leave to Proceed In Forma Pauperis ("IFP Application") and a certified Certificate of Prisoner Institutional/Trust Fund Account Activity. (Doc. No. 9). From a review of these materials, the court finds that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 9) is **GRANTED**.

1

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at Williamson County Jail to ensure that the custodian of Plaintiff's inmate

trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PRISON LITIGATION REFORM ACT SCREENING

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

The complaint alleges claims under 42 U.S.C. § 1983 and RLUIPA, primarily concerning the removal of Plaintiff's religious materials.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983. Plaintiff's Section 1983 claims are premised on the violation of his First Amendment rights.

"The Free Exercise Clause of the First Amendment . . . provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting U.S. Const. amend. I). "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Id*. (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Where a plaintiff makes this threshold showing, the court must consider whether a regulation that "impinges on inmates' constitutional rights . . . is reasonably related to legitimate penological interests." *Id*. (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). If not, "the inquiry ends, and the prisoner prevails." *Cavin v. Mich. Dep't of Corr*., 927 F.3d 455, 461 (6th Cir. 2019) (citations omitted). If so, then the court balances "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy

alternatives' exist that suggest 'the regulation is not reasonable.'" *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

RLUIPA provides stronger protection for the religious liberty of incarcerated individuals than the First Amendment. *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006)). To state a claim under RLUIPA, a prisoner must (1) "demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief'" and (2) "show that the government substantially burdened that religious exercise." *Cavin v. Mich. Dep't of Corr*., 927 F.3d 455, 458 (6th Cir. 2019) (quoting *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)). If the prisoner satisfies these elements, then the burden shifts to the government to show "that the burden furthers 'a compelling government interest' and 'is the least restrictive means' of doing so." *Id*. (quoting 42 U.S.C. § 2000cc-1(a)).

Here, the complaint alleges facts from which the court may infer that Plaintiff has a sincerely held belief that reading and studying the Bible is part of his religious practice. (*See* Doc. No. 1 at 2). For example, the complaint alleges that Plaintiff is a "devout Christian, practicing in the tradition of the Church of Christ" and that the "deprivation of the tablets and non-access of religious books have severely hampered the ability of Plaintiff DeBerry to study his faith-based approach to life." (*Id*.)

The complaint also alleges that, on or about January 18, 2025, "multiple Wiliamson County Sheriff's Office deputies, including but not limited to Deputy Runk, Deputy Moore, and Deputy Carroll," seized all physical religious books in the county jail at the direction of Captain Chad Youker. (*Id*.) Although jail staff later uploaded digital copies of "religious books" on "new County

issued tablets," between January 11, 2025,[1] and December 1, 2025, Deputies Runk, Moore, and Caroll "removed or restricted Plaintiff's access to the tablets . . . depriving Plaintiff's right to religious materials altogether." (*Id*.) In or about August 2025, a new policy was implemented: inmates could not have the tablets between the hours of "20:30 pm to 7:00 am." (*Id*.) Plaintiff "was now fully deprived of access to religious materials, as well as legal materials provided on the tablets." (*Id*. at 3). Plaintiff gained access to "physical religious books" again on October 8, 2025. (*Id*.)

Further, the complaint alleges that Plaintiff was "deprived or restricted from obtaining the assistance of counsel for his defence [sic] . . . when telephone, text messaging, email, and video chat communications have been shut down." (*Id*. at 4).

A reasonable factfinder could conclude that actions taken pursuant to a jail policy that prohibits inmates at the Williamson County Jail from possessing physical Bibles and/or prohibits inmates from accessing digital versions of the Bible for a twelve-hour period every day impinges on inmates' constitutional and RLUIPA rights. *Brown v. Page*, No. 2:20-cv-00070, 2021 WL 288754, at *3 (M.D. Tenn. Jan. 27, 2021) (finding plaintiff had stated viable First Amendment and RLUIPA claims based on restricted access to Bible). "[L]imiting an inmate's access to the religious literature that he is required to read as part of his practice constitutes a substantial burden on his religious exercise." *Yates v. Painter*, 306 F. App'x 778, 780 (3d Cir. 2009) (citing *Washington v. Klem*, 497 F.3d 272, 282-83 (3d Cir. 2007)).

At least as to Plaintiff's Free Exercise claim, it may be relevant that, on some occasions, his restricted access did not preclude him from reading the Bible at all but rather limited the hours

---

[1] The dates in the complaint are internally inconsistent, due to either typographical errors or the court's inability to read Plaintiff's handwriting. In any event, Plaintiff will need to resolve these inconsistencies as the case progresses.

during which he could read the Bible. However, because Defendants have not filed any responsive pleadings, the court "do[es] not have information before [it] about all of" the factors relevant to evaluating a Free Exercise claim. *See Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009). And as to Plaintiff's RLUIPA claim, the availability of an alternative means of practicing his belief "does not play into" the analysis. *Cavin*, 927 F.3d at 461 (citing *Holt*, 574 U.S. at 361-62).

The complaint names Deputies Runk, Moore, and Carroll as Defendants in their official capacities only. (Doc. No. 1 at 1). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, Williamson County. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). It would be redundant to maintain official capacity claims against multiple Defendants representing the same entity. *See Jackson v. Shelby Cnty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (affirming dismissal of redundant official-capacity claims). Accordingly, the court will maintain the official capacity claims against Captain Chad Youker, and the remaining official capacity claims will be dismissed. *See J.H. v. Williamson Cnty., Tenn.,* 951 F.3d 709, 723 n.4 (6th Cir. 2020) (citing *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014)) ("The district court correctly dismissed these official capacity claims as superfluous of the claim against the county.").

Because Plaintiff alleges facts from which the court may infer that these alleged violations were a result of official policies, his Section 1983 and RLUIPA claims may proceed against Captain Youker in his official capacity, which is functionally a claim against Williamson County itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). The Section 1983 and state law claims also will proceed against Captain Youker in his individual capacity, but any individual-capacity RLUIPA claim will be dismissed. *See Haight v. Thompson*, 763 F.3d 554, 569-70 (6th

Cir. 2014) (RLUIPA does not permit money damages against prison officials in their individual capacities).

To summarize, the allegations presently before the court therefore permit Plaintiff's Section 1983 free exercise claims and his and RLUIPA claims to proceed for further development of the record.

These allegations also allow the court to reasonably infer that the challenged Williamson County Jail policies violate Tennessee's statute requiring inmate access to a Bible during non-working hours. Tenn. Code. Ann. § 41-21-211 ("Each inmate shall be provided with a Bible, which the inmate may be permitted to peruse in the inmate's cell at such times as the inmate is not required to perform prison labor.").

Plaintiff also asserts a claim under the Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-225. Plaintiff alleges that the act requires inmates an opportunity to be heard "prior to the implementation of any new policies or procedures" and they were not provided with such an opportunity with regard to the so-called "Bible Ban." (Doc. No. 1 at 4). Given the Tennessee Supreme Court's decision in *Emergency Medical Care Facilities, P.C. v. Division of Tenncare*, 617 S.W.3d 507 (Tenn. 2023), the court finds that this claim should proceed for further development as the record does not provide sufficient information at this time to fully evaluate an UAPA claim. *See id*. at 513 (to determine whether a policy is a "rule" under the UAPA, the court must first determine whether the rule is an "agency statement of general applicability" and then whether it "concern[s] only the internal management of state government" or "affects private rights, privileges or procedures available to the public.").

However, to the extent the complaint attempts to state a denial of access to the court claim under Section 1983, the complaint fails. True, the law is well settled that a prisoner has a First

Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977). That right requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." *Id.* at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). What constitutes meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. *Bounds*, 430 U.S. at 830-31. It is not enough for a plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. Where an incarcerated individual alleges that jail or prison staff interfered with his right to access the courts, he must allege "actual injury" in the form of prejudice to a non-frivolous lawsuit or potential lawsuit. *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999); *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) ("We have identified having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline as some examples of actual prejudice to pending or completed litigation." (quotation marks omitted)).

The complaint does not allege that Plaintiff missed a court deadline or that his pending litigation was otherwise prejudiced by the lack of communication with an attorney. Thus, Plaintiff's allegations fail to state a denial of access to the court claim.

### III. MOTION FOR PRELIMINARY INJUNCTION

Finally, Plaintiff filed a document docketed by the Clerk as a "Motion for Preliminary Injunction." (Doc. No. 3). However, the document does not request any relief. It appears that Plaintiff submitted the filing to provide evidence that he gave Defendants notice of his request for a preliminary injunction. (*See id*. at 1). However, to the extent the document itself was intended

9

by Plaintiff to request injunctive relief, the motion lacks the required allegations and argument and will be denied without prejudice.

## IV. CONCLUSION

Having screened the complaint pursuant to the PLRA, the court finds that it states viable claims under the First Amendment (free exercise), RLUIPA, and Tennessee state law. These claims shall proceed against Captain Youker in his official and individual capacities, except the RLUIPA claim which shall proceed against Captain Youker in his official capacity only.

Plaintiff's access to courts claim under Section 1983 fails to state a claim upon which can be granted. That claim is **DISMISSED**.

Likewise, Plaintiff's claims against Deputies Runk, Moore, and Carroll are **DISMISSED**. Those individuals are no longer Defendants to this action.

Plaintiff's Motion for a Preliminary Injunction (Doc. No. 3) is **DENIED WITHOUT PREJUDICE**.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendant Chad Youker. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendant Youker. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and

10

Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the court from dismissing any claim at any time for reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

11